Good morning, Your Honors. Jamie Cogburn on behalf of the appellant, Tawndra Heath. This case deals with, this appeal deals with three different issues. One, did the court err when they did not grant as a matter of law to dismiss the affirmative defenses of the appellees via directed verdict? And then post-trial, a motion for a new trial based upon allowing those affirmative defenses. Number two, whether the district court erred when it denied the appellant's motion for new trial. And number three, did the district court err when it awarded cost? I'm going to focus my time on the de novo review of the affirmative defenses because that kind of leads to the motion for new trial. In a products liability case, the burden is on the plaintiff. But when you deal with affirmative defenses, the burden is on the defendants. And in this case, the appellees. And when you're dealing with, there was two different affirmative defenses the appellant moved, dismissed at the time of trial. One was substantial alteration of the product. And the other was misuse. First, dealing with substantial alteration, the Nevada Supreme Court has recognized that a manufacturer will be shielded from liability if the injuries are caused by an alteration. However, if the alteration was insubstantial, foreseeable, or did not actually cause injury, then the manufacturer is still liable. And in this case, when you look at the evidence that was presented, the appellant's, I'm sorry, the appellee's expert admitted he did not find the pressure cooker in this case, which was the product, was altered at all. In fact, he never inspected the pressure cooker. There was no testimony that the product in this case was ever altered. The only mention of alteration came from defense counsel in this case. And that was mainly hammered home in closing. The other, in addition to that, no one testified that any alteration that may have been was the cause of the injuries in this case. So moving to misuse, the defendant must establish that the appellant misused the product first, that the misuse was unforeseeable. And that's the key here because the district court ultimately ruled, hey, I believe there may have been some misuse and it was foreseeable. Therefore, the affirmative defense still stands. But in this case, there was no testimony. There was no evidence that the misuse was unforeseeable. And the misuses that were alleged by the appellant's expert were possibly, and he testified that it was speculation and hypotheses. But maybe the pot was overfilled. Maybe the the appellant put too much pressure on the pot when trying to open it. She sped read the instructions or she splashed the contents of the pot on herself after she opened the pot. The expert for the appellee also testified that it is foreseeable that people will speed read the instructions or not even read the instructions at all. And the key is when you're talking about misuse, it has to be unforeseeable. And in this case, all the the misuse allegations by the appellees, especially in closing arguments, dealt with simple misuse of overfilling the pot. But nobody testified. There was not any testimony from a corporate representative or from the expert for the police that the misuse was not foreseeable. In fact, they said all the stuff that is foreseeable. What's the nature of the error you're alleging? Is there a legal error here? Or are you just alleging that basically the evidence was such that the jury verdict is irrational or can't stand? It is both, Your Honor. First, the legal errors. When you allow those when you allow the misuse instruction, allow the alteration instruction as affirmative defense, the burden is on the defense to prove those. And they have to present evidence. And in this case, there was no evidence presented. And ultimately, the error comes in closing arguments. What happens is the counsel gets up and argues misuse and alteration. And we cited through it in the record and it's in the brief is constantly cited. That was the basis for what happened, according to the appellees. Are you claiming any jury instruction was wrong? The misuse and the alteration instructions should not have been allowed at all. Was there an alteration instruction? There was. That's a good question. Not an alteration. I thought it was just a misuse. You're correct. I know there was the misuse instruction. But if the instruction was legally correct and your position is the evidence just didn't support it, you were able to argue that. And a jury could believe you or credit you or credit your opponent. Well, the problem when you when you take that analysis is you're arguing things. You're dealing with a jury that doesn't understand the nuances of the law, which is why you have the gatekeeper, which is the district court. And when you allow an affirmative defense or even if you were if you were to allow a claim by a plaintiff to proceed that there is no evidence for, you can have jurors that make mistakes. And they decide one because of other biases or other just errors or whatever the reason may be. You don't get to interview the jurors and ask them, hey, why did you come to this decision ultimately? But ultimately, all you're stuck with is the decision they made. And by allowing the misuse instruction, you are allowing the defense to argue something that there is no evidence of. But even before we get to misuse, could the jury here have simply just concluded that they didn't believe the plaintiff's side of the story? That is correct that there is no doubt that that could be the conclusion that a jury makes. And again, we go back to you don't know when you allow that instruction and you allow that argument to take place. You are stuck with you. You don't get to make that. You don't you don't get to have that analysis and say, oh, the jury decided on this issue, not this issue, because the verdict form does not allow that. And you're not allowed to interview the jurors. And so you're stuck with what other evidence was there of misuse. And ultimately, the only defense to a product liabilities claim is ultimately that the product wasn't effective in here. Their own test, their own testimony from their own expert says, hey, the pot does open when there's still pressure inside. That in itself means that there's an effective product. And when you couple that with the only therefore the only rational basis that you could come up with is that there was misuse. I thought their expert defense expert said it would be impossible to open the pressure cooker with one hand. The way she testified in that her her injuries were more consistent with a spill of hot liquid as indicating misuse of the pressure cooker. That was their expert. That is correct, your honor. And then their expert went on to say that that's his hypotheses and it would be speculative. He does not know. And when you're when you're dealing with the affirmative defense, again, you have the burden of proof. Just like a plaintiff has the burden of proof to prove their allegations. When you're asserting affirmative defense, you have the you have the burden of proof with that. And you can't rely upon speculation or hypotheses. Their expert went on, also went on to say that the pressure cooker can be open with pressure inside of the unit. And the warning is false. The warning that the unit cannot be open when there's pressure inside. And that's at E.R. 0. I'm sorry, 3 E.R. 0 3 3 3 8 8 3 8 9. So although the expert there, their expert did say, I don't believe that this could have happened, but I don't know because he never tested the unit. He never even saw the unit until the day that he testified at trial. Ultimately, he says the unit can open with pressure inside of it. And that in itself is an unreasonable, unreasonable danger of a product. So you're dealing with the only conclusion you can draw is that the reason that the jury came back with the verdict they came back with. They believe there's misuse or some other issue that we don't know of, which leads to one of the other issues is when you talk about your religious affiliation. And one of the issues in this case was the appellant is Jehovah's Witness. And counsel got up an opening statement and said, talked about that she's a Jehovah's Witness. And there's a specific rule of evidence that says you do not talk about religious affiliation for obvious reasons. Well, you don't discuss or introduce evidence of the party's religious affiliation to bolster or impeach their credibility, which doesn't seem to have been what happened here. There was a passing remark and no objection until four days later. Why was there no objection for four days? The no objection for days is because we were waiting for the transcript because we didn't know if we heard what we heard correctly. And so then when we ultimately got the transcript, we made the objection with the court. But even the statement that was made, did defense counsel suggest that was some reason why the jurors should believe or not believe the plaintiff? There's only one reason you would say that. You're talking about a small sect of religion. So if he would have got up and said, oh, she's a Satanist, we would all assume that they're using that to say, oh, that's a bad religion. But nobody's going to get up. You don't get up and say, oh, counsel's a Presbyterian or the client's a good body Christian. You're only bringing it up when you're defending the case. The only reason you would say something about the plaintiff in that manner is because you're trying to undermine their credibility. I'm not sure I'd necessarily infer that from this record, but be that as it may, I mean, the comment still has to cause prejudice in the trial. And one comment was all we have here. That is correct, Jerome. I think that when you combine when you combine the ultimate with the jury verdict with the misuse instruction, I think that's the basis for the new trial. There's no there's no reasonable basis that the jury could allege that the product was not defective based upon the evidence that was actually presented. Try to address the cost issue before you sit down. Sure. The cost is it is a straightforward procedural issue. The costs were submitted that the appellees filed a bill of cost for approximately eighty six thousand dollars. The appellant would file an objection timely objection. Ultimately, the deputy clerk retax those costs to four hundred dollars. Under the rule FRCP 54 D1, you have seven days to file a motion to have the court reconsider that. In this case, that never happened. Ultimately, the court, based upon another motion, which was filed before the costs were retaxed, had filed the appellees and filed a motion for attorney's fees and costs. And the district court awarded the attorney's fees and costs. And there is no dispute on appeal as to the attorney's fees. But as the cost, the only way you can have the district court reassess those costs or reconsider those costs is through the motion after the court clerk. Is that right? I mean, the district court can't sue a sponsor or it is not the inherent power to do that. I cannot find any case law that says they have inherent power to do it. And after a judgment for a trial, there are there are inherent power and authority to do it under other basis, but not in this circumstance. So the only case that that was cited by the appellees in this case dealt with were ultimately the court affirmed what the retaxing by the district court clerk and without any mention. And what we're saying is there was never even a motion. And procedurally, you have to have a motion to have the court reconsider what the court clerk was brought to the district court's attention after the cost award. In other words, say, perhaps this may have been inadvertent. No, it was a ministerial error. I can't really tell from the record whether this was a conscious decision to reverse the clerk or maybe just a ministerial decision. It was not the the the order that was ultimately appealed was also the order encompassed all of the motions, including the motion for new trial, the motion as a matter of law. And so at that point, we appealed. We did not bring a motion for the court to reconsider or clarify. And I would like to reserve two minutes if that's OK with the court. Let's have any other questions at this time. All right. Thank you. Thank you. Thank you. Good morning and may it please the court. My name is Shannon Dempsey and I'm here on behalf of the appellees. It is clear by the ample evidence in the record that appellant failed to persuade the jury that a product defect existed and cause for injury. Excuse me. Now, while we don't know what exactly happened on the day of the incident, we do know that the jury heard ample evidence refuting appellant story and explaining that her injuries could have been caused by something else, like a spill or a splash. Appellant admits that she sped read the manual cherry pick cherry picking which portion she wanted to read. She doesn't recall releasing pressure via the steam valve and massively overfilling the pressure cooker with liquid. Then when you take into account the appellant's 5'3 height, the placement of this 12-inch pressure cooker on a 63-inch countertop, her injuries to her hand, neck and chest are all consistent with a splash or a spill. Appellant's entire argument is based on the erroneous premise that the jury and this court must ignore this evidence and believe the appellant's version of events. But contrary to appellant's underlying premise, the jury, as the trier of fact, was in the best position to evaluate witnesses' credibility and determine which evidence to believe. Now, the court did ask opposing counsel about the altered condition defense and that was not submitted to the jury. That was not a defense that was raised and instructed by the jury. But it was mentioned at the closing? It was not mentioned in the closing, your honor. The only time altered condition was discussed was when it was appellant's burden to prove that a defect existed when it left the manufacturer's control. And we had our expert witness testify that the lock was clearly broken and degraded and it was not in that condition when it was sold by the manufacturer. We did not raise the altered condition defense in our closing and the jury was not instructed on this. It's a red herring in the appellant's argument. So what about the misuse instruction? So a misuse instruction was given and your opponent argues that there was no evidence of misuse, so it was inappropriate. How do you respond to that? Your honor, there was evidence of misuse presented and appellant fails to state or cite any case law requiring an expert to specifically testify about foreseeability. We introduced evidence, like I stated, about the appellant cherry picking portions of the manual, overfilling the pot, and then in our closing, we argued that this was unforeseeable. We argued that the appellant did not treat this pressure cooker as a product that contains boiling, scalding hot contents. She did not treat it with the care that you would expect a reasonable user to use. And that if she wanted the jury to believe that an explosive event lifted her up and threw her onto the floor, in order for that to happen, she would have had to use a massive amount of weight to overcome several safeguards and break open the lock, and that that is unforeseeable. We argued that it was unforeseeable to the jury. The jury was properly instructed, and this was clearly an issue of fact for the jury to decide. Did your defense here, I mean, depend on unforeseeable misuse, or was the main defense simply, we don't think it happened in the way she's describing, because she really wasn't using the cooker in any way that, before we even get to foreseeable misuse, we just think her story is not correct. That's exactly right, Your Honor. Our main point was that her story is not correct, and that we presented evidence for feuding appellant's testimony, and that appellant did not prove that a product defect existed or even caused her injury, because that injury is easily explainable as a spill or a splash. And it was up to the jury to decide, to weigh the evidence, to listen to the witnesses and determine their credibility, and in this case, the jury's verdict does not go against the clear weight of the evidence, and that's why we were asking this court to affirm. Didn't your expert, or did your expert testify that the cooker could be opened even when there was pressure in the pot? So, there, yes, Your Honor. Our expert did testify that when there is a negligible, a minute amount of pressure inside of the pressure cooker, it can be opened. There is a very small amount of pressure required to keep the locking mechanism in place, and it is such a small amount of pressure that when you open the lid under this minute, negligible amount of pressure, nothing explodes, there's no splashing of the liquid. And that the fact that the pressure cooker does this complies with the industry tests. This is exactly what it's tested for. It's tested under what pressure it will open, and because at these negligible amounts, there's no risk of burns, it is not a defect in the product. And unless the court has any further questions, I would rest on my brief. Could you address the cost issue? The rule is pretty clear that the challenge to the clerk's taxing of costs has to come by motion. Yes, Your Honor. So, the federal rule in this case uses a lot of may language. The court may, the clerk may tax the costs on a motion. The court may review the clerk's actions. There's no statement within that rule that says only if, or only in this instance. So, it's the appellee's position that this was in the discretion of the court, and as the court sat through the whole trial and was familiar with the facts, it was within their discretion of what to award. The rule set out procedures that allow the parties an opportunity to be heard. So, the clerk of court retaxed the cost and only awarded $400, which is very, very, very different from $86,000. And then it appears the defense did not move to challenge that or ask the district court to reconsider the cost. And so, the plaintiffs would have had no reason to file anything or say anything about the cost award if they were satisfied with $400, if they weren't going to object to that, which apparently they didn't. So, how is, how does that fall within any of the procedural protections of the rule that without an opportunity to be heard, they now have a tax award of $86,000? Well, Your Honor, this is a rule that is within the discretion of the court, and if the appellant had an issue with the amount of costs awarded, I do believe they should have raised that issue with the district court. But in this instance, the appellees did not ask the court to review the clerk's decision, and we solely relied on the discretion of the court. Go ahead, Judge Ikuda. The local rule is much more definite and requires a motion to retax must be filed and served within seven days after receipt of the notice. How do we address the effect of the local rule? Well, I think in this instance, Your Honor, it's important that we weren't asking the court to review these decisions. We were confident in whatever decision the district court was going to make. We didn't ask them to review these, and we were waiting on the decision of the court because it was in their discretion. So, you were content with the $400 tax award of costs from the clerk of court? We were content with whatever the district court's decision was. So, you didn't object to a final motion seeking to have that amount altered? We did not, Your Honor. We were merely just waiting for the court to issue its decision, and we were going to abide by whatever the court's decision was. I mean, part of the difficulty here is if you look at the clerk's cost award, the reason the costs were denied was because the clerk found that the costs were impermissible. They were not the kind of costs you can recover, and then we don't have anything from the district court explaining why the court may have thought differently or perhaps just simply did this inadvertently. Yes, Your Honor, that is correct. We don't have specific reasoning about the district court's decision to go against the clerk's findings. We're not sure if it's inadvertent or not, but again, it's our position that it is within the discretion of the court. There is no rule stating that the court cannot change the amounts that the clerk— No, that may be, but at the same time, as Judge Beatty points out, the plaintiff has never had an opportunity to get in front of the district court and explain this because the plaintiff essentially won the cost fight in front of the clerk. The plaintiff could have, I suppose, moved to reconsider in front of the district court but didn't do that, and I don't think he was required to. Understood, Your Honor, and just as the district court was not specifically required to only review the clerk's decision on a motion, it was up to the discretion of the court, and that is, again, why we did not file a motion. We simply were going to rely on the discretion of the court. So what was at issue in the motion for attorney's fees? Opposing counsel noted that there was another motion outstanding that the defense had moved for attorney's fees and mentioned costs in that motion as well. So was it your expectation that the district court was going to award costs based on what was raised in the other motion? No, Your Honor. In the other motion, the appellant raised issues about whether our fees were reasonably priced, whether or not we can be—our attorney's fees can be reimbursed for a variety of issues for investigating, and the district court, in its decision, explicitly stated that our attorney's fees were reasonable, and we were just relying on the court and its discretion to award both attorney's fees and costs. We were not asking them to review the clerk's decision. We were going to rely on whatever decision the district court came to. The basis for the fees was just Nevada law? Yes, Your Honor, and again, to clarify, the appellant is not challenging the attorney's fees. They are simply—they're not challenging the—I believe it's around $340,000 in attorney's fees. They're only challenging these costs. And if there's no further questions, I would rest on my brief. All right. Thank you. Thank you. Rufio, I want to talk about the unforeseeability and foreseeability in the misuse instruction. Again, when you're asserting the affirmative defense, you have to have some evidence that it was unforeseeable. The only evidence you can have in a case would be documentation or testimony. Here, there was no documentation. The defense only presented their single expert witness, and he never said any of the misuse. Any question of the pot being filled too much or possibly not reading the instructions or all these different things was unforeseeable misuse. So you have to have—and there's no doubt that there can be allegations of misuse, but it has to be unforeseeable misuse. Otherwise, the manufacturer is still liable for a defective product. Regarding their expert also, he testified at trial that—and in the record, it's 2ER224—that he did not find the pressure cooker was altered at the time of the incident. At the time of trial, there had been testing done on the pressure cooker. So the pressure cooker was in a different condition at the time of trial than at the time of the incident. So it's important to separate those because, ultimately, he said, yes, looking at the pressure cooker now, I see that there's some grooving where you would unlock the lock. But I have no reason to believe—I have no evidence to show that it was altered at the time the incident took place. And that's a very key distinction. It's not what the evidence is or what the state of the device is at trial, but at the time of the event. And with that, I have nothing further unless you have any questions. All right. Thank you. Thank you. This case is submitted. Thank you, counsel, for your arguments. And we are adjourned for the day.
judges: IKUTA, BADE, BRESS